**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: ) | |
| ) | |
| KENNETH DEAN GONZALES, ) | Bankruptcy Case No. 10-11433 EEB |
| TRINIDAD MARY GONZALES, ) | Chapter 13 |
| ) | |
| Debtors. ) | |

_____

**ORDER DENYING CONFIRMATION**
_____

THIS MATTER comes before the Court on Debtors' proposed Amended Chapter 13 Plan ("Plan") of October 25, 2010, the Standing Chapter 13 Trustee's Objection, and supporting briefs filed by both parities. The Court hereby FINDS and CONCLUDES:

**I. BACKGROUND**

The relevant facts of this case are undisputed. Debtors own a home in Lakewood, Colorado which is encumbered by three mortgages. Debtors filed for Chapter 13 bankruptcy protection on January 28, 2010, and are considered above-median income debtors. On their Form 22C, Debtors claimed a secured debt expense deduction of $2,412, representing their combined monthly payment on all three mortgages. This and other expense deductions resulted in Debtors having a projected disposable income ("PDI") of less that $0. As currently drafted, the Plan proposes to pay $5,941 to Class 4 unsecured creditors over a plan period of thirty-six months.

Under their proposed Plan, Debtors would continue to make payments on the first two home mortgages, but not the third mortgage because Debtors assert that the holder of the third mortgage, CitiMortgage, is wholly unsecured. Thus, the Plan proposes to treat CitiMortgage as an unsecured creditor. Debtors have stopped making the $456 monthly mortgage payment to CitiMortgage and it is apparent that they have no intent to do so during the plan period. *See* Debtors' Schedule J. If Debtors are denied a secured debt expense deduction for the CitiMortgage payment on Form 22C, their PDI would be $127.

As required by Local Bankruptcy Rule 3012-1(a), Debtors also filed a Motion to Determine Secured Status Pursuant to 11 U.S.C. § 506 and F.R.B.P. 9014 (the "506 Motion"), seeking to value CitiMortgage's claim at zero and declaring that claim wholly unsecured. They gave proper notice of the 506 Motion and no party objected. As a result, in due course, the Court will enter an order granting the 506 Motion. In accordance with the practice in this district, the 506 order will only enter concurrently with the confirmation order and it will provide that: "If the bankruptcy case is dismissed or converted to a chapter 7, this order shall be deemed vacated and the lien shall be reinstated and shall continue in full force and effect as specifically provided

by 11 U.S.C. §§ 348(f)(1)(C) and 349(b)(1(c)."[1]  If Debtors successfully complete their plan payments, and otherwise satisfy the requirements for a discharge, they will be entitled to an order extinguishing CitiMortgage's lien permanently.

The Trustee objects to Debtors' Plan on two grounds.  First, the Trustee argues that Debtors are not entitled to claim a secured debt expense on Form 22C for the $456 monthly payment to CitiMortgage, because Debtors are not currently, and in the future will not be paying that amount.  Second, the Trustee argues Debtors are required to propose a sixty-month plan, rather than the thirty-six months currently proposed.  Each of these arguments is addressed below.

## II. DISCUSSION

### A. Secured Debt Deduction

Because the Trustee has objected to confirmation, § 1325(b)(1)(A) specifies that the Court may not confirm the Plan unless it provides that all of the Debtors' PDI to be received during the applicable commitment period will be paid to the unsecured creditors.  In turn, §§ 1325(b)(2) and (b)(3) require the Court to look to § 707(b)(2) (the "Means Test"), embodied in Form 22C, to determine the amount that Debtors must pay to unsecured creditors in order to satisfy §1325(b)(1)(A).  In determining PDI, Debtors are allowed to subtract from their current monthly income certain specified expenses, including debts "scheduled as contractually due" on secured claims.  11 U.S.C. § 707(b)(2)(A)(iii).

This Court has previously interpreted the phrase "scheduled as contractually due" as covering payments on a secured debt owed under a contract at the time of filing the petition, whether or not they will actually be paid in the future.  *See In re Lindstrom*, 381 B.R. 303, 307-08 (Bankr. D. Colo. 2007).  Recognizing a split of authority over the proper interpretation of this phrase, the Court adopted a meaning that "comports with this Court's understanding of the Means Test as a mechanical, backward-looking test, designed to measure the debtor's ability to fund a chapter 13 plan as of the petition date."  *Id.* at 308.  This Court's interpretation reflected its understanding that, in adopting the Means Test, Congress wanted to "eliminate the broad discrepancies in court decisions . . . [and] to do this, they enacted the Means Test, which was intended to impose a 'rigid and inflexible' set of expense standards.  To consider postpetition actions would be inconsistent with the creation of an inflexible test that considers only the petition date 'snapshot.'"  *Id.*  In *In re Liehr*, No. 08-21528 EEB (Bankr. D. Colo. September 22, 2009), this Court applied this same reasoning to a Chapter 13 debtor's attempt to deduct a mortgage payment on a home that was to be surrendered and/or foreclosed upon.

After issuance of the *Liehr* decision, the Supreme Court handed down its decision in *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010) ("*Lanning*").  Based on its reading of *Lanning*, the

---

[1] Unless otherwise set forth, references herein to "section" or "§" shall mean the Bankruptcy Code, 11 U.S.C. § 101, et seq.

Tenth Circuit Bankruptcy Appellate Panel reversed this Court's *Liehr* decision, holding that *Lanning* required application of a "forward looking" approach that took into account the surrender/foreclosure. *In re Liehr,* 439 B.R. 179, 184-87 (10th Cir. BAP 2010). The court noted that a bankruptcy court calculating PDI "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 185 (citing *Lanning*, 130 S.Ct. at 2478).

In *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716 (2011) ("*Ransom*"), the Supreme Court further clarified *Lanning's* forward-looking approach to mean that a debtor cannot claim "phantom deductions" for expenses which the debtor will not actually incur during the plan period. *Id*. at 724-25. In essence, *Ransom* extends the "forward looking" approach espoused by *Lanning* to the expense side of the Means Test equation (albeit for standard deductions provided for under § 707(b)(2)(A)(ii) rather than secured debt payments under § 707(b)(2)(A)(iii)). Even though this Court may agree with Justice Scalia's dissent in *Lanning* and *Ransom*, the Court recognizes that it is bound by the majority opinions in those cases.

Debtors argue that their case is distinguishable because they are retaining their home and may ultimately end up having to pay the third mortgage if they are unable to successfully complete their plan. This distinction, however, does not compel a different result under the reasoning of *Ransom*. The question is not whether the Debtors may ultimately have to pay the third mortgage, but rather whether the third mortgage is an expense that the Debtors will have during the life of their Plan. If it is not, then an allowance to cover that cost is not "reasonably necessary" and may not be taken. *Ransom*, 131 S.Ct. at 725. Accordingly, Debtors are not entitled to include the $456 payment to CitiMortgage on line 47 of Form 22C and Debtors PDI must be adjusted from $0 to $127.40.

### B. Applicable Commitment Period

The Trustee also objects to Debtors' Plan on the basis that Debtors, who have above-median income, have not committed to pay their PDI over a five-year period. Section 1325(b)(1)(B) requires a debtor to pay all his PDI "to be received in the applicable commitment period." Section 1325(b)(4) defines the applicable commitment period ("ACP") differently, depending on the debtor's income. For above-median income debtors, the ACP is five years. 11 U.S.C. § 1325(b)(4)(A)(ii). For below-median debtors, it is three years. 11 U.S.C. § 1325(b)(4)(A)(I). The ACP may be "less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B).

There is a split of authority on how to interpret the ACP requirement. One line of cases holds that the ACP concept imposes a temporal requirement, mandating the term of a plan to extend over five years for above-median income debtors. The other side views ACP as a multiplier to be used in the formula of "PDI x ACP," establishing a debtor's monetary obligation. This Court previously adopted the monetary view of ACP, based on its statutory placement and its relationship to other provisions of the Code. *In re Williams*, 394 B.R. 550,

566-69 (Bankr. D. Colo. 2008). In *Williams*, this Court also held that the related question of whether the ACP requirement applies to debtors with negative or $0 PDI is resolved under the monetary view, because "zero multiplied by either three or five is still zero." *Id.* at 570.

Subsequent to this Court's *Williams* opinion, the Supreme Court issued its decisions in *Lanning* and *Ransom.* Although neither opinion directly addresses the ACP requirement, other courts have interpreted *Lanning* and *Ransom* as supporting adoption of the temporal view. *See Baud v. Carroll*, 2011 WL 338001, at *8-12 (6th Cir. Feb. 4, 2011); *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 878-79 (11th Cir. 2010); *In re Timothy*, 2010 WL 5383897, at *5 (10th Cir. BAP Dec. 29, 2010). These courts emphasize the Supreme Court's holding that the Means Test is not a strict mechanical formula, but rather may account for changes to a debtor's actual income and expenses. *See In re Tennyson*, 611 F.3d at 878-79 (citing *Lanning*, 130 S.Ct. at 2487). Because PDI is not strictly mathematical, these courts conclude that ACP must have an existence independent of the PDI calculation. In other words, ACP cannot be strictly a multiplier because then ACP "would necessarily be dependent on the multitude of indeterminate factors that *Lanning* has allowed to be used in the determination of projected disposable income. This in turn would leave 'applicable commitment period' an indeterminate term." *Id.*

Courts applying *Lanning* and *Ransom* also emphasize that the temporal view of ACP is more in line with the purpose of BAPCPA emphasized by the Supreme Court: to ensure that debtors repay creditors the maximum they can afford. *See Baud*, 2011 WL 338001, at *11-12 (citing *Ransom*, 131 S.Ct. at 721). The temporal view supports this purpose because it forces an above-median income debtor to remain in bankruptcy for the entire five years, thus permitting interested parties to monitor the debtor and capture any increases in the debtor's income during that time. *See id.* at *11. In contrast, "[t]reating 'applicable commitment period' as a multiplicand defeats this purpose by allowing a debtor to use chapter 13, with its expanded discharge, to determine at the outset of the chapter 13 case a set amount owed to creditors." *In re Timothy*, 2010 WL 5383897, at * 6 (citing *In re Slusher*, 359 B.R. 290, 304 (Bankr. D. Nev. 2007)). As noted by the Sixth Circuit, "applying the applicable commitment period as a temporal requirement avoids the 'senseless result[ ] that we do not think Congress intended' of 'deny[ing] creditors payments that the debtor could easily make' if additional disposable income were to become available after confirmation." *Baud*, 2011 WL 338001, at *11 (citing *Lanning*, 130 S.Ct. at 2475-76).

Courts also point out that both *Lanning* and *Ransom* looked to pre-BAPCPA practice in construing Means Test provisions, because such practice "is telling because we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Lanning*, 130 S.Ct. at 2473 (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.*, 549 U.S. 443, 454 (2007)). The relevant pre-BAPCPA practice with regard to ACP, according to some courts, was to interpret § 1325(b)(1) as setting a three-year temporal limitation on Chapter 13 plans, at least at the time of confirmation. *See Baud*, 2011 WL 338001, at *9-10 (citing cases); *In re King*, 2010 WL 4363173, at *3 (Bankr. D. Colo. Oct. 27, 2010). This pre-BAPCPA interpretation of § 1325(b)(1), according to some courts, further supports adoption of the temporal view of ACP. *In re King*, 2010 WL 4363173, at *3.

This Court considers the pre-BAPCPA practice with regard to plan length less than clear and thus of negligible assistance in construing the current text of § 1325(b)(1). *See In re Williams*, 394 B.R. at 568 (discussing pre-BAPCPA split of authority on the issue). In addition, the interaction of ACP with other provisions of the Code remains problematic. *See In re Williams*, 394 B.R. at 567 (discussing interaction of ACP with several other provisions of Chapter 13); *Baud*, 2011 WL 338001, at *19-20 (acknowledging but not deciding difficult issue of how ACP requirement interacts with § 1329(a)). Nevertheless, the Court cannot ignore the Supreme Court's clear rejection of the mechanical interpretation of § 1325(b)(1) and well as Supreme Court's emphasis on interpreting the Means Test to ensure a debtor pays as much as possible to his or her creditors. Given these considerations, the Court agrees that both *Lanning* and *Ransom* necessitate adoption of a temporal view of ACP.

In this case, this means the Court cannot confirm Debtors' Plan over Trustee's objection unless the Plan provides that all of the Debtors' PDI to be received during the ACP will be paid to the unsecured creditors. 11 U.S.C. § 1325(b)(1). Because Debtors are above median income and because their Plan does not propose to pay all allowed unsecured creditors in full, the ACP is five years. 11 U.S.C. § 1325(b)(4)(A). As currently drafted, Debtors' Plan proposes a plan length of only thirty-six months. As such, the Plan cannot be confirmed.[2]

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Standing Chapter 13 Trustee's Objection is SUSTAINED and confirmation of the Debtors' proposed Plan is DENIED. A separate Order will enter setting this case for a further status conference.

DATED: May 4, 2011.

BY THE COURT:

Elizabeth E. Brown,
United States Bankruptcy Judge

---

[2]Because the Court has determined that Debtors have a PDI of $127, the Court need not address the related issue of whether the ACP requirement applies to debtors with negative or $0 PDI. The Court notes, however, that many of the cases cited above which adopt the temporal view of ACP, also find it applicable to $0 PDI debtors. *See Baud*, 2011 WL 338001 at *17-21; *In re Tennyson*, 611 F.3d at 878-79.